PATRICK O'DONNELL, Admr., Defendant in Error, *vs.* THE ERIE RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed October 25, 1911—Rehearing denied Dec. 6, 1911.*

1. MASTER AND SERVANT—*when master is liable for an injury to servant.* The master is liable for an injury to its servant caused by its negligence in failing to detach the crank from a windlass which was supporting a heavy load, where the evidence tends to show that the servant, while engaged in his duties, fell against the crank, causing the dog to slip from the ratchet and release the load, with the result that the crank revolved rapidly and with great force and inflicted fatal injuries upon him.

2. INSTRUCTIONS—*when refusal of instruction is not reversible error.* Refusal of an instruction stating that if the deceased servant "jumped upon the handle of a certain machine while he was playing and was not then and there doing any work required of him by the defendant, and he was then and there killed by reason of said handle turning round, then you should find the defendant not guilty," is not reversible error, where the plaintiff asked no instructions and those given at the defendant's request included the principle announced in such refused instruction.

3. The court reviews the evidence in this case, and holds that it tends to show that the deceased servant was engaged in performing his duties and was rightfully at the place where he met his death; that he was not, as a matter of law, guilty of contributory negligence, and that he came to his death as the result of negligence by the defendant.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

W. O. JOHNSON, BULL & JOHNSON, and MORSE IVES, for plaintiff in error.

THEODORE G. CASE, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by the defendant in error against the plaintiff in error in the circuit court of Cook county to recover damages for the death of the defendant in error's intestate, Arthur Krause, alleged to have been caused by the negligence of the plaintiff in error. A trial resulted in a verdict and judgment in favor of the defendant in error for the sum of $2000, which judgment has been affirmed by the Appellate Court for the First District, and the record has been removed into this court for further review by writ of *certiorari.*

Two reasons are urged in this court as grounds of reversal: (1) The court erred in denying the motion of the defendant, made at the close of all the evidence, for a directed verdict; and (2) the court erred in refusing to give to the jury defendant's sixth offered instruction.

The declaration consisted of three counts. Each count alleges that defendant was possessed of a certain freight house and dock near the Washington street bridge, in Chicago, and was using a certain tramway machine, which consisted of a certain crank, dog, ratchet, and divers other pieces of mechanism; that the dog was for the purpose of holding the machine motionless and preventing the crank thereof from revolving; that the crank was so fitted that it could be removed and laid to one side; that the dog, and the pin which held it, were in a worn, defective and dangerous condition, which was unknown to Krause but was known to the defendant; that Krause was a servant of the defendant, employed in its office upon its said premises; that Krause in his lifetime was rightfully being and working around said machine in the performance of his du-

ties. The first count alleged that the defendant negligently failed to keep the crank, dog and pin of said machine in a reasonably safe condition, by reason whereof the dog, failing to hold said machine motionless, released it and caused said crank to revolve rapidly and strike said Krause and cause his death. The second count alleged that the defendant negligently failed to remove the crank from said machine and the machine suddenly started and caused said crank to revolve rapidly and strike said Krause and cause his death; and the third count alleged that the defendant negligently failed to povide said Krause with a reasonably safe place to work; that it permitted said dangerous machine to be upon its premises; that said machine suddenly started, causing the crank to revolve rapidly and strike said Krause and cause his death. The general issue was pleaded.

The facts, in brief, are as follows: The defendant was possessed of a two-story building situated on the west side of Market street, a north and south street, and extending from Randolph street to Washington street, east and west streets, in the city of Chicago, and abutting in the rear upon a dock seventeen feet wide, which adjoined the Chicago river, which building was used as a storehouse in which to store freight. About midway of the building, north and south, on the west side, on the first floor, there was a door some ten feet in width, which opened upon the dock, and which was connected with the river by a heavy platform some twelve feet wide, which platform was lowered and raised to correspond with the height of boats from which freight was being loaded and unloaded, and which platform was raised and lowered by means of a windlass operated by an iron crank. On each side of the platform were situated two large posts about midway between the building and the river, and the windlass was attached to the south post, some three feet from the floor of the dock, the iron crank being of sufficient size, strength and length to enable four men to operate the windlass. The windlass had two

cog-wheels, and a dog was so arranged as to drop into a ratchet and prevent the windlass from turning back when the platform was raised above the dock, and when the platform was not in use the crank of the windlass was removed. There is evidence in the record tending to show the windlass was out of repair, the dog working too loose in the ratchet, and the crank was not removed, although the platform was raised and not in use, but the weight of the platform was left in such position that it was supported by the windlass. Krause, at the time of his death, was fifteen years and nine months of age, and had for some time been in the employ of the defendant as an office boy, the office of the defendant being situated in the south-east corner on the second floor of the building, it being the duty of Krause to run errands, copy letters, and do whatever he was directed to do in and about the premises by his superiors. At about 11:50 in the forenoon of the 30th of June, 1905, he was called into the inner office and immediately re-appeared in the main office with a paper in his hand and went to the first floor and out on to the dock, at a door in the west side of the building, situated south of the place where he was injured. He was thereafter observed going north, with the paper in his hand. When he reached the platform he jumped upon a wooden horse standing near the post to which the windlass was attached and from the horse he jumped toward the platform. He attempted to catch hold of the post, which was decayed and gave way, and he landed upon the crank of the windlass, which revolved rapidly, striking him and breaking his legs and crushing his skull, from the effects of which injuries he instantly died.

It is first contended that the trial court erred in declining to take the case from the jury at the close of all the evidence,—first, because the evidence shows that the defendant owed no duty to Krause at the time he was injured; and secondly, because he was guilty of contributory negligence in jumping from the wooden horse upon the crank of the

windlass. The evidence clearly tended to show that it was the duty of Krause to go to all parts of the premises occupied by the defendant in the performance of the service for which he was employed; that he frequently went upon and along the dock with freight bills, and for other purposes, when boats were being loaded or unloaded. It also appeared that not more than two minutes before he was killed he left the office of the defendant with a paper in his hand, which he had received in the inner office and which he held in his hand at the time of his death, and while it was not shown what the paper was or where he was going at the time he was killed, we are of the opinion that the jury were justified in inferring, from the evidence, that he was at that time acting in the line of his duty and was engaged in transacting the business of the defendant in accordance with the terms of his employment. The declaration averred that Krause was rightfully at the place and was performing his duty at the time he was killed, and those averments of the declaration, we think, the evidence fairly tends to sustain. It was manifestly negligence for the defendant to maintain upon its premises a loaded windlass, which had attached thereto a heavy iron crank which was secured from revolving by a defective dog, which by a slight jar might be displaced and the crank of the windlass released and caused to revolve with great force and rapidity. We are therefore of the opinion the court did not err in submitting to the jury the question whether Krause, when killed, was in a place upon the premises of the defendant where he had the right to be, and at that time was in the performance of a duty which he owed to the defendant. It was the duty of defendant to see that the place which it furnished Krause in which to do his work was reasonably safe. Neither can it be held, as a matter of law, that Krause, in view of the evidence found in this record, was guilty of such contributory negligence at the time he was killed as would be a bar to this action.

The only eye-witness to the accident was a colored man by the name of Burke, who was in the employ of the defendant, and he was standing north of the platform where Krause was killed, some one hundred and twenty feet. Burke testified, in chief, that he observed Krause going north along the dock; that he had a paper in his hand; that "he was playing along the dock;" that he jumped upon the wooden horse; that he had to give something of a spring to get on to the horse; that he "jumped from the horse and landed on the crank;" that the crank immediately revolved several times and Krause was struck by the crank and killed. When the evidence of this witness, as a whole, is considered, it is quite evident Burke did not mean to state that Krause was playing on the dock in the sense that he was loitering or neglecting his duties, but he probably intended to convey the idea that he was running. He further says in his evidence that when he jumped from the horse he caught hold of the post, which was rotten at the top, and he could not hold on to it, and he struck the crank. We think the fair inference to be drawn from the testimony of Burke, when taken in connection with the other facts proven in the case, is that Krause was passing north along the dock to deliver a message or perform the errand with which or upon which he had been dispatched from the office; that when he reached the platform, which must have been some height above the floor of the dock, he intended to climb upon the platform with a view to cross over it; that in so doing he first jumped upon the wooden horse and from there intended to jump to the platform, and in attempting to make the leap he fell and struck upon the crank of the windlass; that the jar caused the dog to slip in the ratchet, which released the crank and the weight of the platform caused it to revolve, and he was struck by the crank and killed. It is impossible to say, as a matter of law, that Krause should have climbed upon the platform in some other way; that by getting upon the horse and jumping

from the horse to the platform he was guilty of such contributory negligence as to bar recovery. It is too clear for argument that the weight of the platform was supported by the windlass, otherwise when the dog was released the crank of the windlass would not have revolved rapidly. If the dog had been in proper repair and properly adjusted to the ratchet, or the crank, as was usual, had been removed, or the post had not been rotten, no injury would, perhaps, have resulted from the manner in which Krause attempted to cross the platform. In any event, the question whether Krause was guilty of such contributory negligence as to defeat a recovery, by reason of the manner in which he attempted to cross the platform, was a question of fact for the jury. It is our opinion the court did not err in declining to take the case from the jury.

The defendant's sixth offered instruction reads as follows:

"If you believe, from the evidence, that the deceased, Arthur Krause, jumped upon the handle of a certain machine while he was playing and was not then and there doing any work required of him by the defendant, and he was then and there killed by reason of said handle turning round, then you should find the defendant not guilty."

The plaintiff asked no instructions, and five instructions were given on behalf of the defendant. By the first instruction the jury were advised that the plaintiff could not recover unless Krause was himself free from negligence. By the second, if the death of Krause was the result of an accident there could be no recovery. By the fourth, that the defendant owed no duty to furnish Krause a safe place in which to work when he was away from his place of employment, and that if he was at a place where his duties did not require him to be at the time he was injured he could not recover. The given instructions fully cover all the law of the case, and include the principle announced in the refused instruction that if Krause negligently jumped,

while at play, upon the handle of the windlass he could not recover, which was the only material principle which the court was asked to give to the jury by that instruction, and the instruction might properly have been refused on the ground it was covered by the other given instructions. The refusal of the defendant's sixth offered instruction does not constitute reversible error.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*